United States District Court
Southern District of Texas
**ENTERED**
September 07, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LEE ANNE SAVOIA-MCHUGH, *et al.*, | § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | CIVIL ACTION H-20-3387 |
| JOHN W. MCCRARY, *et al.*, | § § § | |
| *Defendants.* | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is a motion to dismiss filed by defendants John W. McCrary and Santa Fe Capital, LLC (collectively, the "Defendants"). Dkt. 11. Having considered the motion, response, reply, and the applicable law, the court is of the opinion that the motion should be GRANTED IN PART AND DENIED IN PART.

**I. BACKGROUND**

**A. Factual Allegations**

This case involves two failed real estate investments. Dkt. 6. Plaintiffs Lee Ann Savoia-McHugh and John Savoia-McHugh (collectively, the "Plaintiffs") allege the following facts in their complaint, which the court takes as true for the purposes of the instant motion.

The Defendants, along with Philip Krispin and Michael Glass, approached the Plaintiffs with an investment opportunity. *Id.* The Plaintiffs, the Defendants, Krispin, and Glass started a joint venture and formed Waterfall, LLC. *Id.* McCrary and Glass were the managers handling Waterfall's daily operations. *Id.* McCrary also served as Waterfall's in-house counsel and CFO. *Id.* Waterfall's operating agreement stated that the Plaintiffs would own 20% and Santa Fe Capital,

LLC ("Santa Fe") would own 20% of the company. *Id.* McCrary was Santa Fe's sole member and controlled its actions during the relevant time. *Id.*

On June 6, 2016, the Defendants, Krispin, and Glass approached the Plaintiffs to invest $200,000 in Hunters Chase, an apartment complex in Houston, Texas. *Id.* The Defendants, Krispin, and Glass assured the Plaintiffs that equity and debt financing had been secured and that the Plaintiffs would have a 20% ownership interest in proportion with their ownership of Waterfall. *Id.* The Defendants knew or should have known that no financing existed and that no provision for the Plaintiffs' ownership interest had been established. *Id.* Unknown to the Plaintiffs, the Defendants had executed a separate contract with Nexus Capital Investments, LLC, where Nexus had loaned Santa Fe $200,000 for the earnest money deposit. *Id.* McCrary had personally guaranteed repayment of that loan. *Id.* Plaintiffs were directed to wire their $200,000 investment directly to Nexus, where it was used to satisfy the Defendants' debt and guarantee. *Id.* Around the time the payment was made, the due diligence period expired, the deal never closed, and the Plaintiffs lost the $200,000 used to satisfy the Defendants' debt. *Id.*

On August 8, 2016, the Defendants, Krispin, and Glass approached the Plaintiffs to invest in Hammerly Oaks, another apartment complex in Houston, Texas. *Id.* The Defendants, Krispin, and Glass assured the Plaintiffs that a financial sponsor had been secured, the project was in order, and the Plaintiffs would have a 20% ownership interest. *Id.* The Defendants knew or should have known these assurances were false. *Id.* Plaintiffs invested another $200,000, and once again these funds were used to relieve McCrary of a personal debt obligation rather than fund the investment. *Id.* Plaintiffs lost the $200,000 after funding for Hammerly Oaks was never secured. *Id.*

## B. Procedural History

Plaintiffs originally sued the Defendants and several other parties on July 10, 2019, in the United States District Court for the Northern District of Florida. *Id.* That court dismissed the Defendants for lack of personal jurisdiction on August 5, 2020. *Id.* Plaintiffs then commenced the instant action on October 1, 2020. Dkt. 1. Defendants filed a motion to dismiss on December 9, 2020. Dkt. 4. In response, Plaintiffs filed an amended complaint on January 12, 2021, asserting seven counts including multiple theories of fraud, a civil conspiracy claim, an implied contract claim, and a claim based on unjust enrichment/quasi-contract. Dkt. 6. Defendants now move to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, and to dismiss the claims involving fraud under Federal Rule of Civil Procedure 9(b) for failure to plead with particularity. Dkt. 11.

## II. LEGAL STANDARD

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007). In considering a Rule 12(b)(6) motion to dismiss a complaint, courts generally must accept the factual allegations contained in the complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The court does not look beyond the face of the pleadings in determining whether the plaintiff has stated a claim under Rule 12(b)(6). *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

*Twombly*, 550 U.S. at 555 (citations omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* The supporting facts must be plausible —enough to raise a reasonable expectation that discovery will reveal further supporting evidence. *Id.* at 556.

In addition to meeting the plausibility standard, under Federal Rule of Civil Procedure 9(b), if a party is alleging fraud or mistake, the pleading must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009) (noting that Rule 9(b) does not "supplant" Rule 8(a)). However, this particularity requirement "does not 'reflect a subscription to fact pleading.'" *Grubbs*, 565 F.3d at 186 (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997)). Instead, pleadings alleging fraud must contain "simple, concise, and direct allegations of the circumstances constituting the fraud, which . . . must make relief plausible, not merely conceivable, when taken as true." *Id.* (internal quotations omitted) (referring to the standard enunciated in *Twombly*).

The Fifth Circuit interprets Rule 9(b) strictly, "requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002). Thus, Rule 9(b) generally requires the complaint to "set forth 'the who, what, when, where, and how' of the events at issue." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (quoting *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)). However, "Rule 9(b)'s ultimate meaning is context-specific." *Grubbs*, 565 F.3d at 188. Thus, "[d]epending on the claim, a plaintiff may sufficiently 'state with particularity the circumstances constituting fraud or mistake' without

4

including all the details of any single court-articulated standard—it depends on the elements of the claim at hand." *Id.*

### III. ANALYSIS

Defendants move to dismiss all claims for failure to state a claim upon which relief can be granted and for failure to plead fraud with particularity. Dkt. 11. The first amended complaint lists claims based on various theories of fraud, civil conspiracy, implied contract, and unjust enrichment. Dkt. 6.

**A. Fraud-Based Claims**

In counts 1–4, the Plaintiffs allege common-law fraud, fraudulent inducement, fraudulent or negligent misrepresentations, and fraudulent or negligent omissions. *Id.* These claims are based on two real estate investments: Hunters Chase and Hammerly Oaks. *Id.* These claims are supported by alleged misrepresentations and omissions relating to each investment. *Id.* The Plaintiffs also allege defendants engaged in a civil conspiracy to commit fraud in count 7. *Id.* The Defendants seek dismissal of all five counts for failure to state a claim upon which relief can be granted and failure to plead with particularity as required by Rule 9(b). *Id.* The court agrees in part and disagrees in part.

>   **1. Common-Law Fraud, Fraudulent Inducement, and Fraudulent or Negligent Misrepresentations Claims**

To satisfy Rule 9(b), a plaintiff must plead the "who, what, when, where, and how" for each alleged fraudulent misrepresentation. *Dorsey*, 540 F.3d at 339. Negligent misrepresentations require the same pleading standard as fraudulent misrepresentations when the fraud and negligence claims are based on the same set of alleged facts. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*,

5

343 F.3d 719, 723 (5th Cir. 2003), *opinion modified on denial of reh'g*, 355 F.3d 356 (5th Cir. 2003).

The Plaintiffs effectively plead the "who, what, and when" of the alleged misrepresentations regarding the Hunters Chase transaction. The Plaintiffs allege that on June 6, 2016, the Defendants falsely represented both that they obtained financing and the Plaintiffs would have an ownership interest in the property. Dkt. 6 ¶ 15. However, the complaint is silent as to "where and how" the alleged misrepresentations were made. Dkt. 6. It is unclear whether the misrepresentations were made over the phone or in a meeting, or whether they were made personally or through an agent. *Id.* Rule 9(b) requires such details, but the amended complaint fails to provide them. *Id.* Thus, the complaint does not meet the Rule 9(b) standard for the common-law fraud, fraudulent inducement, and fraudulent or negligent misrepresentations claims regarding Hunters Chase.

Likewise, the Plaintiffs effectively plead the "who, what, and when" of the alleged misrepresentations regarding the Hammerly Oaks transaction. The Plaintiffs allege that on August 8, 2016, the Defendants falsely represented that a financial sponsor had been secured and the Plaintiffs would have an ownership interest in the property. Dkt. 6 ¶ 23. However, the amended complaint is again silent as to "where and how" the alleged misrepresentations were made. Thus, the complaint fails to meet the Rule 9(b) standard for the common-law fraud, fraudulent inducement, and fraudulent or negligent misrepresentations claims regarding Hunters Chase.

The amended complaint fails to plead the facts supporting fraud with the required particularity. Thus, the motion to dismiss claims of common-law fraud, fraudulent inducement,

and fraudulent or negligent misrepresentations in counts 1–4 for failure to plead with particularity is GRANTED, and the claims are DISMISSED WITHOUT PREJUDICE.

### 2. Fraudulent or Negligent Omissions Claims

A fraudulent omission is not plead in the same manner as a fraudulent misrepresentation. For a claim of fraudulent omission to satisfy Rule 9(b), the complaint must plead sufficient facts to support the elements fraud by non-disclosure. *See Grubbs*, 565 F.3d at 188. Negligent omissions require the same pleading standard as fraudulent omissions when the fraud and negligence claims are based on the same set of alleged facts. *Benchmark*, 343 F.3d at 723. Under Texas law, fraud by non-disclosure requires: (1) a deliberate failure to disclose material facts; (2) a duty to disclose; (3) that the plaintiff was ignorant and did not have an equal opportunity to discover; (4) that the defendant intended the plaintiff to act or refrain from acting; and (5) injury. *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 219–20 (Tex. 2019).

The Plaintiffs effectively plead all elements of fraudulent omissions regarding Hunters Chase against McCrary, but not Santa Fe. The Plaintiffs allege that the Defendants did not disclose the contract with Nexus, that the due diligence period had expired, that the deposit was non-refundable, and that the money was used to relieve McCrary of a personal guaranty. Dkt. 6 ¶ 16. These are sufficient facts to support the allegation that the Defendants deliberately failed to disclose material facts. Further, the complaint alleges the Plaintiffs were unaware of these facts and were unable to learn of them due to the alleged actions of the Defendants. *Id.* The Plaintiffs allege the non-disclosure was intended to induce the transfer of money. *Id.* ¶ 17. And the complaint alleges the non-disclosure caused injury in the form of financial loss. *Id.* ¶ 18.

7

Thus, for four of the five elements, the amended complaint has alleged sufficient facts against both the Defendants. However, this is not the case for the element of duty. The complaint states the Defendants had duty to disclose. *Id.* ¶ 46. This conclusory statement alone is insufficient as the complaint must provide "more than labels and conclusions." *Twombly*, 550 U.S. at 555. However, the Plaintiffs allege they were members of Waterfall, and McCrary was a manager. Dkt. 6 ¶¶ 11, 12. As a manager, McCrary served as Waterfall's agent. *See* Tex. Bus. Orgs. Code § 101.241(a). Thus, as an agent, McCrary owed fiduciary duties to the members of Waterfall, including the Plaintiffs. *See Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 200 (Tex. 2002).

The amended complaint fails to include analogous facts that would impose as similar duty upon Santa Fe. To be sure, Santa Fe is also a member of Waterfall. Dkt. 6 ¶ 11. And members of a Texas LLC may owe duties to each other by nature of the operating agreement. Tex. Bus. Orgs. Code § 101.401. However, Texas courts have not held that members of an LLC owe fiduciary duties as a matter of law when the operating agreement is silent. *In re Hardee*, No. 11–60242, 2013 WL 1084494, at *10 (Bankr. E.D. Tex. Mar. 14, 2013). The Plaintiffs have failed to allege that the terms of the operating agreement imposed fiduciary duties upon Santa Fe or any other alternate facts that establish such a duty. Thus, the amended complaint has pleaded facts with the required particularity for claims of fraudulent or negligent omissions against McCrary, but not Santa Fe, in relation to the Hunters Chase investment.

Likewise, the Plaintiffs effectively plead all elements of fraudulent or negligent omissions regarding Hammerly Oaks against McCrary, but not Santa Fe. The Plaintiffs allege that the Defendants did not disclose that the money paid was soon to be non-refundable and would be used

8

to relieve McCrary of a personal guaranty. Dkt. 6 ¶ 25. Further, the complaint alleges the non-disclosure was intended to induce the transfer of money, and this caused injury in the form of financial loss. *Id.* ¶¶ 25, 26. Finally, the alleged facts establish a duty to disclose for McCrary, but not Santa Fe, for the same reasons discussed above. Thus, the amended complaint has alleged facts with the required particularity for claims of fraudulent or negligent omissions against McCrary, but not Santa Fe, in relation to the Hammerly Oaks investment.

The amended complaint has alleged facts supporting claims of fraudulent or negligent omissions with the required particularity against McCrary, but not Santa Fe. Thus, the motion to dismiss claims of fraudulent or negligent omissions in counts 1–4 against Santa Fe for failure to plead with particularity is GRANTED, and the claims are DISMISSED WITHOUT PREJUDICE. The motion to dismiss claims of fraudulent or negligent omissions in counts 1–4 against McCrary for failure to plead with particularity is DENIED.

### 3. Civil Conspiracy Claim

Under Texas law, the elements of a civil conspiracy claim are: (1) there were two or more persons; (2) with an unlawful purpose or a lawful purpose to be accomplished by unlawful means; (3) a meeting of the minds; (4) at least one unlawful, overt act; and (5) injury. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983). Civil conspiracy is a derivative tort and liability is dependent on an underlying tort. *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019). Thus, civil conspiracy is a theory of vicarious liability and not an independent tort. *Id.* at 140–42. The Plaintiffs allege fraud as the purported conspiracy's only unlawful purpose. Dkt. 6. Further, the only unlawful, overt acts alleged are acts of fraudulent misrepresentations or omissions. *Id.* Allegations of negligent misrepresentation or omission are

9

inapplicable since negligence cannot serve as the underlying tort of a civil conspiracy. *Triplex Commc'n, Inc. v. Riley*, 900 S.W.2d 716, 720 (Tex. 1995). Therefore, the claim is subject to Rule 9(b), and the Plaintiffs must plead sufficient detail based on the elements. *See Grubbs*, 565 F.3d at 188.

The Plaintiffs allege there were two or more persons involved with particularity by naming four parties in the conspiracy: Glass, Krispin, and the Defendants. Dkt. 6 ¶ 61. Facts that provide an inference of concerted action such as "joint participation in the transactions" and "enjoyment of the fruits of the transactions" are sufficient for the requirements of an unlawful purpose and a meeting of the minds. *Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 582 (Tex. 1963). The complaint satisfies this element by pleading the members of the alleged conspiracy approached plaintiffs jointly to solicit investments. Dkt. 6 ¶ 10. Further, the complaint claims the Defendants enjoyed the fruits of this action when the loans to Santa Fe—and guaranteed by McCrary—were paid off. *Id.* ¶¶ 16, 19, 27. The complaint sufficiently pleads at least one overt, unlawful act: the fraudulent non-disclosure by McCrary discussed above. Finally, the complaint sufficiently pleads the injury element in the form of a $400,000 economic loss over two separate transactions. *Id.* ¶¶ 21, 26, 27.

The Plaintiffs allege facts that support the elements for a civil conspiracy claim with the particularity required by Rule 9(b). Thus, the motion to dismiss the civil conspiracy claim in count 7 for failure to state a claim upon which relief can be granted and failure to plead with particularity is DENIED.

B.  Remaining Claims

Defendants move to dismiss counts 5 and 6 for failure to state a claim upon which relief can be granted. Dkt. 11. These counts contain claims for implied contract and unjust enrichment/quasi-contract. Dkt. 6. The Defendants argue the complaint alleges insufficient facts to maintain an implied contract claim and that there is no cause of action for unjust enrichment in Texas. Dkt. 6. The court agrees in part and disagrees in part.

1. **Implied Contract Claim**

The elements to establish the existence of an implied contract are identical to those for an express contract, there must be an offer, an acceptance, a meeting of the minds, mutual assent to the terms, and the intent the contract should be binding. *Plotkin v. Joekel*, 304 S.W.3d 455, 476 (Tex.App.—Houston [1st Dist.] 2009, no pet.). The true difference between an express contract and an implied contract is the manner of proof required. *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972). For implied contracts, mutual assent to the terms is implied from the circumstances. *Mann Frankfort Stein & Lipp v. Fielding*, 289 S.W.3d 844, 850 (Tex. 2009). Such contracts are also referred to as contracts implied-in-fact. *See Preston Farm & Ranch Supply v. Bio-Zyme Ent.*, 625 S.W.2d 295, 298 (Tex. 1981).

The amended complaint is silent on every element necessary to establish an implied contract. There is no allegation of an offer, acceptance, meeting of the minds, or an intent that an agreement be binding. Importantly, the facts alleged are not of the sort where mutual assent is to be implied. Implied mutual assent occurs when the transaction would not make sense without the presence of an agreement that the parties merely failed to express. *Fielding*, 289 S.W.3d at 850. For example, when a buyer orders goods, and the seller sends them without discussion of terms—

11

such a transaction only makes sense if there is an implied agreement the buyer will pay for the goods. Restatement (Second) of Conts. § 4 cmt. a, illus. 1 (1981). The alleged facts do not establish this sort of exchange.

The deficiency in pleading for an implied contract claim is illuminated by the Plaintiffs' response, which defends the implied contract claim with arguments appropriate for a claim involving a "contract implied-in-law." Dkt. 12. A contract implied-in-law is a separate concept, albeit one with an unfortunately similar name, and based on the law of restitution and unjust enrichment. *See Plotkin*, 304 S.W.3d at 477–78.

To the extent that the amended complaint does raise a claim for breach of an implied contract, it does not allege sufficient facts to make such a claim plausible and raise a right to relief above the speculative level. Thus, the motion to dismiss the claim of implied contract in count 5 for failure to state a claim upon which relief can be granted is GRANTED, and the claims are DISMISSED WITHOUT PREJUDICE.

**2. Unjust Enrichment or Quasi-Contract Claim**

Restitution and unjust enrichment is a body of law premised on the idea that a defendant who is unjustly enriched at the expense of a plaintiff is subject to liability. Restatement (Third) of Restitution and Unjust Enrichment § 1 (2011). This body of law is unfortunately saddled with a variety of terms such as restitution, unjust enrichment, quasi-contract, constructive contract, and contract implied-in-law, all used to invoke the same legal concept. This mix of terms inevitably sows confusion. Even the Restatement acknowledges that its preferred term of "restitution" can generate confusion by leading some to believe it refers to a remedy rather than its intended use as a term of art. *Id.* §1 cmt c.

Prior to the modern formulation, it was necessary to plead an unjust enrichment action by using one of the archaic, fictitious-promise pleadings or "common counts" such as "money had and received." Andrew Kull & Ward Farnsworth, *Restitution and Unjust Enrichment: Cases and Notes* 129–30 (2018). Money had and received was an old, formal way to plead unjust enrichment whereby it is alleged that the defendant acquired money by improper means and then broke a fictitious promise to return it. *Id.* at 4. In the seminal case of *Moses v. Macferlan*, Lord Mansfield described such an action as one "to recover back money, which ought not in justice to be kept." *Moses v. Macferlan*, 2 Burr. 1005, 1012, 97 Eng. Rep. 676, 680 (K.B. 1760).

An action for money had and received is still recognized in Texas. *Stonebridge Life Ins. Co. v. Pitts*, 236 S.W.3d 201, 203 n.1 (Tex. 2007) (per curiam). A claim for money had and received requires a plaintiff to show that money in the possession of the defendant belongs to the plaintiff in equity, justice, and law. *Best Buy v. Barrera*, 248 S.W.3d 160, 162–163 (Tex. 2007). The facts alleged in the amended complaint easily fit the structure set forth by the Supreme Court of Texas for a claim of money had and received. Dkt. 6. The Plaintiffs could have chosen to use the term money had and received to express the same legal concept as pleading a claim for unjust enrichment, but the downside of using the common counts is that it invites confusion between pleadings involving implied contracts and pleadings seeking relief under a theory of unjust enrichment. Kull & Farnsworth, *supra*, at 130. Thankfully, the archaic common counts are not required to seek relief under a theory of restitution and unjust enrichment in Texas.

The Supreme Court of Texas has accepted the modern formulation and adopted a draft version of the Restatement (Third) of Restitution and Unjust Enrichment, including the core concept that unjust enrichment is a cause of action. *Miga v. Jensen*, 299 S.W.3d 98, 105 (Tex.

2009); *see also BMG Direct Mktg. v. Peake*, 178 S.W.3d 763, 768 (Tex. 2005) (adopting the restatement's approach to the voluntary-payment rule as a defense to an unjust enrichment claim). The Defendants draw the court's attention to its previous decisions, which relied on Texas cases predating *Miga*, that declined to recognize unjust enrichment as an independent cause of action. *Schouest v. Medtronic, Inc.*, 92 F.Supp.3d 606, 614 (S.D. Tex. 2015) (citing Walker v. Cotter Props., Inc., 181 S.W.3d 895, 900 (Tex.App.—Dallas 2006, no pet.)); *Applin v. Duetsche Bank Nat. Trust*, No. H–13–2831, 2014 WL 1024006, at *7 (S.D. Tex. 2014) (citing *Doss v. Homecoming Fin. Network, Inc.*, 210 S.W.3d 706, 710 n.10 (Tex.App.—Corpus Christi 2006, pet. denied)). These cases still acknowledged a cause of action in quasi-contract, and merely preferred to use the term unjust enrichment to describe a factual situation necessary to that claim. However, the court follows the guidance of the Supreme Court of Texas when applying Texas law, and the Supreme Court of Texas has since adopted the terminology of the Restatement, including the use of the terms restitution and unjust enrichment to describe the cause of action. *Miga*, 299 S.W.3d at 105.

Further, the Supreme Court of Texas has recognized a cause of action for unjust enrichment while analyzing which statute of limitations applies. *Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 871 (2007). The Supreme Court of Texas has recognized a cause of action for unjust enrichment while acknowledging that a valid, written contract serves as a defense. *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 685 (Tex. 2000). Finally, the Supreme Court of Texas has clarified that a claim of unjust enrichment is based on a theory of quasi-contract and is "an obligation imposed by law to do justice even though it is clear that no promise was ever

14

made or intended." *Id.* at 683–84.  Therefore, there is a cause of action for unjust enrichment in Texas.

The Plaintiffs allege that the Defendants received benefits that justice should not allow them to retain.  Dkt. 6.  Specifically, it is alleged that the Defendants were relieved of liability on two loans agreements they had either entered into or personally guaranteed.  Dkt. 6 ¶¶ 19, 25, 27.  Allegations of fraud are not necessary to establish a claim for unjust enrichment.  Liability for unjust enrichment does not "depend on the precise nature of the wrongdoing involved."  Restatement (Third) § 41, cmt a (2011).  It is sufficient that the complaint alleges the Defendants misappropriated investment funds.  Dkt. 6 ¶ 19, 25.  Thus, Rule 9(b) does not apply, and it is not necessary for the Plaintiffs to plead with particularity to pursue a claim of unjust enrichment.

The Plaintiffs allege facts to plausibly plead a claim upon which relief can be granted, whether that claim is termed unjust enrichment, quasi-contract, contract implied-in-law, or money had and received.  Thus, the motion to dismiss the claim of unjust enrichment/quasi-contract in counts 5–6 for failure to state a claim upon which relief can be granted is DENIED.

## IV. Conclusion

Defendants' motion to dismiss is GRANTED IN PART AND DENIED IN PART.  It is GRANTED with respect to the common-law fraud, fraudulent inducement, fraudulent or negligent misrepresentations, and implied contract claims against the Defendants, and with respect to the fraudulent or negligent omissions claims against Santa Fe, which are DISMISSED WITHOUT PREJUDICE.  It is DENIED with respect to the civil conspiracy and unjust enrichment/quasi-contract claims against the Defendants, and with respect to the fraudulent or negligent omissions claims against McCrary.  The court GRANTS the Plaintiffs leave to amend the claims that are

dismissed without prejudice. However, the Plaintiffs shall amend their complaint within twenty days of the date of this order if they desire to do so. Otherwise, these claims will be dismissed with prejudice.

    Signed at Houston, Texas on September 7, 2021.

                                                    _____
                                                          Gray H. Miller
                                                    Senior United States District Judge