United States District Court
Southern District of Texas
**ENTERED**
June 06, 2022
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| LEE ANNE SAVOIA-MCHUGH, *et al.*, | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-20-3387 |
| | § | |
| JOHN W. MCCRARY, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

### MEMORANDUM OPINION AND ORDER

Pending before the court is defendants John W. McCrary and Santa Fe Capital, LLC's ("Santa Fe") motion for summary judgment. Dkt. 23. After reviewing the parties' filings, the court ordered supplemental briefing on two issues not fully addressed in the motion. Dkt. 32. Having reviewed the motion, response, reply, supplemental briefing, and the applicable law, the court is of the opinion that the defendants' motion for summary judgment should be GRANTED IN PART AND DENIED IN PART and that the court should *sua sponte* GRANT summary judgment for the defendant on the plaintiffs' claim for civil conspiracy.

### I. BACKGROUND

This case involves allegations of fraud relating to multiple failed real estate investments. *See* Dkt. 26, Ex. 1. In 2016, Michael Glass and Philip Krispin approached plaintiffs Lee Anne and John Savoia-McHugh to participate in various investment opportunities from Alabama to Texas through a purchasing entity called Waterfall, LLC. *Id.* ¶ 3. Glass and Krispin allegedly told the plaintiffs that they were working closely with McCrary, the sole member of Santa Fe, who had extensive experience in real estate investing. *Id.* ¶ 4. Solicitation materials given to the plaintiffs listed McCrary, Glass, and Krispin as Waterfall, LLC's management team. Dkt. 26, Ex. 1-C. After

the plaintiffs agreed to join, the amended operating agreement for Waterfall, LLC listed the members as the plaintiffs, Glass, Krispin, and Santa Fe.  Dkt. 26, Ex. 1-B.

Before December 2017, the plaintiffs had almost no direct contact with McCrary.  Dkt. 23, Ex. A at 1–2.  In the spring of 2016, the plaintiffs, Glass, and McCrary discussed prospective properties on a short phone call.  Dkt. 23, Ex. G.  McCrary limited his involvement on that call to an exchange of pleasantries.  Dkt. 23, Exs. A at 2, G at 26.  The plaintiffs had no direct email correspondence with McCrary until December 2017, although others sent emails that copied both the plaintiffs and McCrary.  Dkt. 23, Ex. A at 2.

McCrary and Santa Fe were involved in negotiations and agreements related to three Texas properties: Avalon at Royal Oaks, Hunters Chase, and Hammerly Oaks.  Dkt. 26, Ex. 1 ¶ 9.  The plaintiffs' role was to provide funding for earnest money and third-party costs.  Dkt. 26, Ex. 2 at 42.  McCrary did not communicate with the plaintiffs about these transactions and instead relied on Glass and Krispin.  *Id.* at 106.  These deals required a sponsor with significant net worth, so Krispin and McCrary worked to secure funding from Nexus Capital Investments, LLC ("Nexus").  *Id.* at 44, 144–46.  The plaintiffs were not informed of the need for a sponsor, or the role Nexus played in the deals.  Dkt. 26, Exs. 1 ¶ 14–16, 2 at 44.  They were also not informed that their investments would be nonrefundable if the transactions failed to close.  Dkt. 26, Ex. 1 ¶ 10.

The plaintiffs made investments in May, July, and August of 2016.  *Id.* ¶¶ 11–19.  The first investment was for $100,000 in May of 2016 for the deposit on Avalon at Royal Oaks.  *Id.* ¶ 11.  Second, the plaintiffs made a $200,000 investment on July 5, 2016, for Hunters Chase.  *Id.* ¶ 16.  The second investment was used to repay Nexus's funding and satisfy a personal guaranty McCrary had made on that loan.  Dkt. 26, Ex. 2 at 153.  McCrary had authorized and relied on

Glass to inform the plaintiffs that this particular investment was nonrefundable.  Dkt. 26, Ex. 2 at 106.  McCrary also directed Glass to obtain Lee Anne Savoia-McHugh's signature and identification for paperwork with the title company related to the Hunters Chase transaction. Dkt. 26, Ex. 1-E.  Third, the plaintiffs made an investment in August of 2016 for the acquisition of Hammerly Oaks.  Dkt. 26, Ex. 1 ¶ 18.

The business venture ran into trouble the following month during a September 3, 2016, phone call among the plaintiffs, Glass, and Krispin.  Dkt. 23, Ex. B at 74.  On this call, Lee Anne Savoia-McHugh learned for the first time that the Hunters Chase and Hammerly Oaks investments were nonrefundable.  *Id.*  Three days later, Krispin sent the plaintiffs an email assuring them that a $100,000 deposit for Hammerly Oaks was not at risk; however, he did not disclose that the money was nonrefundable.  Dkt. 26, Ex. 2 at 157.  Nine days later, $200,000—funds the plaintiffs had entrusted to an escrow company for the Hammerly Oaks transaction—was transferred to Nexus' nominee and attorney.  Dkt. 26, Ex. 1 ¶ 20.  Finally, during email correspondence with McCrary, the plaintiffs learned about the loans from Nexus and McCrary's guarantees in December of 2017. *Id.* ¶ 22.

On July 10, 2019, the plaintiffs filed suit in the United States District Court for the Northern District of Florida against Glass, Krispin, McCrary, Santa Fe, Eastern Union Funding, LLC, Waterfall, LLC, and Waterfall Group, LLC (the "Florida Lawsuit").  *Id.* ¶ 29.  On August 5, 2020, United States District Judge M. Casey Rodgers dismissed McCrary and Santa Fe from the Florida Lawsuit for lack of personal jurisdiction.  Dkt. 26, Ex. 3.  On October 1, 2020, the plaintiffs filed the instant lawsuit.  Dkt. 1.  The plaintiffs' second amended complaint brings claims for fraud,

fraudulent misrepresentations and omissions, fraudulent inducement, negligent misrepresentations and omissions, unjust enrichment, and civil conspiracy.  Dkt. 21.

## II. LEGAL STANDARD

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party."  *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).  If the moving party meets its burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine issue for trial.  Fed. R. Civ. P. 56(e).  The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant.  *Env't Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008).

"[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence."  *Celotex*, 477 U.S. at 326.  The court must give the parties "notice and a reasonable time to respond."  Fed. R. Civ. P. 56(f).  The Fifth Circuit has "'strictly enforced' the notice requirement."  *D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 210 (5th Cir. 2018) (quoting *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 28 F.3d 1388, 1397 (5th Cir. 1994)).

## III. ANALYSIS

### A. Objections to Summary Judgment Evidence

The defendants object to seven paragraphs in the affidavit of Lee Ann Savoia-McHugh. Dkt. 29. The defendants object to five of the paragraphs as conclusory. *Id.* They also object to five paragraphs as improper attempts to contradict her prior deposition testimony.[1] *Id.* Finally, the defendants object to all seven paragraphs for lack of personal knowledge. *Id.* The court will first outline the standards for the three types of objections made by the defendants before analyzing the objections.

#### 1. Types of Objections

##### i. Conclusory Statements

"[W]ithout more, a vague or conclusory affidavit is insufficient to create a genuine issue of material fact in the face of conflicting probative evidence." *Kariuki v. Tarango*, 709 F.3d 495, 505 (5th Cir. 2013); *see also Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 291 (5th Cir. 2020) (unpublished) ("[W]hen an affidavit is conclusory, it cannot preclude summary judgment."). "[A] conclusory statement recites the bottom-line legal standard but fails to present any factual detail or specifics indicating what evidence will actually satisfy the requisite legal standard." *Salazar v. Lubbock Cnty. Hosp. Dist.*, 982 F.3d 386, 392 (5th Cir. 2020) (Ho, J., concurring) (citing *Conclusory*, *Black's Law Dictionary* (11th ed. 2019)).

---

[1]	The defendants support their objection by citing *Thorn v. Sundstrand Aero Corporation*, a Seventh Circuit case discussing the material alteration of deposition testimony through the use of an errata sheet. 207 F.3d 383, 389 (7th Cir. 2000). This case is not on point. Rather, the defendants' objection invokes the sham affidavit doctrine, which the court will analyze under Fifth Circuit precedent. *See infra*, III(A)(1)(ii).

*ii.  Sham Affidavit Doctrine*

"Under the sham affidavit doctrine, a district court may refuse to consider statements made in an affidavit that are 'so markedly inconsistent' with a prior statement as to 'constitute an obvious sham.'" *Winzer v. Kaufman Cnty.*, 916 F.3d 464, 472 (5th Cir. 2019) (quoting *Clark v. Resistoflex Co.*, 854 F.2d 762, 766 (5th Cir. 1988)).  "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment." *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000) (quoting *Perma Research and Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)).  "However, not every discrepancy in an affidavit justifies disregarding it," and "the bar for applying the [sham affidavit] doctrine is a high one, typically requiring affidavit testimony that is 'inherently inconsistent' with prior testimony." *Seigler v. Wal-Mart Stores Tex., L.L.C.*, 30 F.4th 472, 477 (5th Cir. 2022) (quoting *Winzer*, 916 F.3d at 472). "When an affidavit merely supplements rather than contradicts prior deposition testimony, the court may consider the affidavit when evaluating genuine issues in a motion for summary judgment." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 496 (5th Cir. 1996).

*iii.  Lack of Personal Knowledge*

The defendants' objections for lack of foundation cite Federal Rule of Evidence 602.  *See* Dkt. 29.  That rule states that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  Fed. R. Evid. 602.  "Evidence to prove personal knowledge may consist of the witness's own testimony." *Id.*  "[P]ersonal knowledge is a question of conditional relevancy . . . [and] preponderance of the evidence is not the standard." 27 Wright & Gold, *Federal Practice and Procedure: Evidence*

§ 6027 (2d ed. 2007).  Rule 602 is satisfied when "there is enough evidence of personal knowledge that a reasonable juror could give some weight to the testimony."  *Id.*

### 2.  The Defendants' Objections

#### i.  Paragraph 5

Paragraph 5 states that "McCrary and Santa Fe were directly involved and actively participated in multiple acts and omissions in furtherance of the civil conspiracy alleged by the Plaintiffs."  Dkt. 26, Ex. 1 ¶ 5.  The defendants object to this paragraph as conclusory and for lack of personal knowledge.  Dkt. 29.  The court concludes this paragraph is a conclusory statement that a civil conspiracy existed and that the defendants performed fraudulent acts or omissions without "any factual detail or specifics indicating what evidence will actually satisfy the requisite legal standard."  *See Salazar*, 982 F.3d at 392.  Therefore, the defendants' objection is SUSTAINED.

#### ii.  Paragraph 9

Paragraph 9 states that "McCrary, acting individually and on behalf of Santa Fe, worked to facilitate negotiations and agreements of sale in connection with three (3) Texas properties." Dkt. 26, Ex. 1 ¶ 9.  The defendants object to this paragraph as conclusory and for lack of personal knowledge.  Dkt. 29.  The court concludes that this paragraph is not conclusory because it does not merely recite a legal element of a claim.  *See Salazar*, 982 F.3d at 392.  Instead, this statement reflects Lee Anne Savoia-McHugh's understanding regarding McCrary's role in the transactions. Her declaration also provides support that this statement is based on her personal knowledge and that "a reasonable juror could give some weight to the testimony."  *See* Wright & Gold, *supra*, § 6027.  Therefore, the defendants' objection is OVERRULED.

7

       *iii.  Paragraph 13*

Paragraph 13 states that "[i]n July 2016, John and I were solicited and persuaded by Glass, Krispin[,] and McCrary to invest earnest money deposits in another real estate project."  Dkt. 26, Ex. 1 ¶ 13.  The defendants object to this paragraph as subject to the sham affidavit doctrine and for lack of personal knowledge.  Dkt. 29.  Lee Anne Savoia-McHugh testified that she did not remember communicating with McCrary before December of 2017.  Dkt. 21, Ex. H.  She later remembered that she spoke with McCrary by telephone once in the spring of 2016.  Dkt. 21, Ex. G.  And she did not remember when she first exchanged emails with McCrary, believing at first it was December of 2017 and then admitting she could not remember.  Dkt. 21, Ex. H.

The court concludes that this paragraph is not subject to the sham affidavit doctrine because it does not reach the high bar of being inherently inconsistent with the prior deposition testimony.  *See Seigler*, 30 F.4th at 477.  A solicitation through email in July of 2016 would supplement the earlier testimony where she did not remember when she first exchanged emails with McCrary.  *See S.W.S. Erectors.*, 72 F.3d at 496.  Further, Lee Anne Savoia-McHugh's testimony was already inconsistent—alternating between saying she had no phone calls with McCrary and remembering he was on at least one phone call—and it would not be inherently inconsistent to later remember a second phone call and supplement her testimony with that recollection.  *See id.*  Thus, the court is satisfied that the paragraph is not "so markedly inconsistent with a prior statement as to constitute an obvious sham."  *See Winzer*, 916 F.3d at 472.  The jury must weigh the credibility of this statement in light of her prior testimony.

8

Lee Anne Savoia-McHugh's declaration also provides support that this statement is based on her personal knowledge and that "a reasonable juror could give some weight to the testimony." *See* Wright & Gold, *supra*, § 6027.  Therefore, the defendants' objection is OVERRULED.

### iv.  Paragraph 18

Paragraph 18 states that "in or around August 2016, Glass, Krispin[,] and McCrary solicited me and John to invest in another real estate investment . . . based in part on false representations."  Dkt. 26, Ex. 1 ¶ 18.  The defendants object to this paragraph as subject to the sham affidavit doctrine and for lack of personal knowledge.  Dkt. 29.  The court concludes that this paragraph is not subject to the sham affidavit doctrine because it does not reach the high bar of being inherently inconsistent with the prior deposition testimony.  *See supra*, III(A)(2)(iii).  The declaration also provides support that this statement is based on her personal knowledge and that "a reasonable juror could give some weight to the testimony."  *See* Wright & Gold, *supra*, § 6027. Therefore, the defendants' objection is OVERRULED.

### v.  Paragraph 22

Paragraph 22 states that the "Plaintiffs did not discover . . . the misrepresentations and omissions by McCrary, Glass[,] and Krispin [] until in or around December, 2017 following communications between me and McCrary."  Dkt. 26, Ex. 1 ¶ 22.  The defendants object to this paragraph as conclusory, subject to the sham affidavit doctrine, and for lack of personal knowledge.  Dkt. 29.  This statement is not conclusory because it includes an evidentiary basis, namely the email correspondence described in the following paragraphs and attached as Exhibit G. *See* Dkt. 29, Exs. 1 ¶¶ 23–25, 1-G.

Further, the court concludes that this paragraph is not subject to the sham affidavit doctrine because it does not reach the high bar of being inherently inconsistent with the prior deposition testimony. *See supra*, III(A)(2)(iii). The declaration also provides support that this statement is based on her personal knowledge and that "a reasonable juror could give some weight to the testimony." *See* Wright & Gold, *supra*, § 6027. Therefore, the defendants' objection is OVERRULED.

### vi. *Paragraph 26*

Paragraph 26 states that "[a]t all material times, McCrary and Santa Fe authorized and instructed Krispin and Glass — as their agents, partners, investors[,] and co-members in Waterfall, LLC — to communicate with and make representations to Plaintiffs." Dkt. 26, Ex. 1 ¶ 26. The defendants object to this paragraph as conclusory, subject to the sham affidavit doctrine, and for lack of personal knowledge. Dkt. 29. As the alleged agency relationship is a legal conclusion central to the plaintiffs' theory, a statement that assumes the relationship without "any factual detail or specifics indicating what evidence will actually satisfy the requisite legal standard" is conclusory. *See Salazar*, 982 F.3d at 392. Therefore, the defendants' objection is SUSTAINED.

### vii. *Paragraph 28*

Paragraph 28 states that the "Plaintiffs suffered the loss of hundreds of thousands of dollars as a direct consequence of McCrary's misrepresentations, omissions[,] and other misconduct." Dkt. 26, Ex. 1 ¶ 28. The defendants object to this paragraph as conclusory, subject to the sham affidavit doctrine, and for lack of personal knowledge. Dkt. 29. The court concludes this paragraph is a conclusory statement reciting the legal element of causation without "any factual

here

detail or specifics indicating what evidence will actually satisfy the requisite legal standard." *See Salazar*, 982 F.3d at 392.  Therefore, the defendants' objection is SUSTAINED.

## B. Statutes of Limitations

The defendants argue that all of the plaintiffs' claims are barred by the relevant statutes of limitations.  Dkt. 23 ¶¶ 5–6.  The parties disagree on the date the plaintiffs' claims accrued and whether the Florida Lawsuit tolled the statutes of limitations.  *See* Dkts. 23, 26.  The court concludes that the claims accrued on September 3, 2016, and the Florida Lawsuit tolled the statutes of limitations as of July 10, 2019.  Thus, the claims subject to a two-year statute of limitations are barred, but the claims subject to a four-year statute of limitations are not.

### 1. When the Claims Accrued

"The date a cause of action accrues is normally a question of law."  *Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 623 (Tex. 2011).  "Generally, a claim accrues when the defendant's wrongful conduct causes the claimant to suffer a legal injury . . . 'even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred.'"  *Berry v. Berry*, — S.W.3d —, No. 20-0687, 2022 WL 1510330, at *4 (Tex. May 13, 2022) (quoting *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996)).  The discovery rule is an exception to the legal injury rule and "applies in cases of fraud and fraudulent concealment, and in other cases in which 'the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable.'" *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997) (quoting *Computer Assoc. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996)).  In such cases, a statute of limitations "does not start to run until the fraud is discovered or the exercise of reasonable diligence would discover it."  *Hooks v. Samson Lone Star, Ltd. P'ship*, 457 S.W.3d 52, 57 (Tex. 2015).

The plaintiffs allegedly suffered the injury when they made nonrefundable investments in May, July, and August of 2016.  *See* Dkt. 26, Ex. 1 ¶¶ 11–19.  Due to the alleged fraud, the plaintiffs argue they were unaware of their potential claims against the defendants until late December of 2017—when McCrary emailed Lee Anne Savoia-McHugh and informed her that the plaintiffs' investment in Hunters Chase was used to pay back Nexus' earnest money funding. Dkts. 26 at 14; 26, Ex.1 ¶¶ 22, 25.  However, determining when the plaintiffs realized they had a legal claim against a particular defendant is not the correct application of the discovery rule.  *See Hooks*, 457 S.W.3d at 57.

The correct analysis under the discovery rule is to determine the date that the fraud was discovered or would have been discovered through the exercise of reasonable diligence.  *Id.*  Lee Anne Savoia-McHugh testified that during a phone call on September 3, 2016, she learned the plaintiffs had been "hoodwinked" and "fooled" into investing "in real estate in a nonrefundable way" because their $200,000 investment in Hammerly Oaks was used to pay Nexus.  Dkt. 23, Ex. B at 73–74.  The court concludes that the plaintiffs discovered—or would have discovered through the exercise of reasonable diligence—the alleged fraud on September 3, 2016.  Therefore, as a matter of law, the claims accrued on September 3, 2016.  *See Hooks*, 457 S.W.3d at 57; *Lehmann*, 359 S.W.3d at 623.

### 2.  Tolling the Statutes of Limitations

The instant lawsuit was filed on October 1, 2020.  *See* Dkt. 1.  The plaintiffs argue that under Tex. Civ. Prac. & Rem. Code § 16.064, the Florida Lawsuit tolled the statutes of limitations as of July 10, 2019.  Dkt. 26 at 15.  "[F]or diversity actions, a federal court should apply not only state statutes of limitation but also any accompanying tolling rules."  *Weatherly v. Pershing,*

*L.L.C.*, 945 F.3d 915, 925 (5th Cir. 2019) (quoting *Vaught v. Showa Denko K.K.*, 107 F.3d 1137, 1145 (5th Cir. 1997)).  Under Texas law, the statute of limitations is tolled "between the date of filing an action in a trial court and the date of a second filing of the same action in a different court" if the action in the first court was dismissed for lack of jurisdiction and the second action is commenced "in a court of proper jurisdiction" within sixty days.  Tex. Civ. Prac. & Rem. Code § 16.064(a).

The instant lawsuit meets the statutory conditions of section 16.064(a) because the defendants were dismissed from the Florida Lawsuit for lack of personal jurisdiction on August 5, 2020.  *See* Dkt. 26, Ex. 3.  And the action was subsequently filed in a court of proper jurisdiction within sixty days.  *See* Dkt. 1.  Nevertheless, the defendants argue that section 16.064(a) is inapplicable because the Florida Lawsuit was filed with intentional disregard for proper jurisdiction.  Dkt. 28 at 2.

Section 16.064(a) "does not apply if the adverse party has shown in abatement that the first filing was made with intentional disregard of proper jurisdiction."  Tex. Civ. Prac. & Rem. Code § 16.064(b).  This section "was drafted precisely because 'capable lawyers' often make 'good faith' mistakes" on jurisdiction, but "it does not apply to a strategic decision to seek relief from" a court lacking jurisdiction.  *In re United Services Auto. Ass'n*, 307 S.W.3d 299, 313 (Tex. 2010).  Once the defendants moved for relief under section 16.064(b), the plaintiffs must show that they did not intentionally disregard proper jurisdiction.  *See id.*; *see also Draughon v. Johnson*, 631 S.W.3d 81, 92 (Tex. 2021).  "The plaintiff must present some evidence on the issue, similar to that imposed on a non-movant who receives a no-evidence summary judgment."  *Garrett Operators, Inc. v. City of Houston*, 461 S.W.3d 585, 592 (Tex. App.—Houston [1st Dist.] 2015, no pet.).

13

The plaintiffs meet their burden by submitting Judge Rodgers's order from the Florida Lawsuit, dismissing the defendants for lack of personal jurisdiction.  Dkt. 26, Ex. 3.  That order extensively analyzed the plaintiffs' theory of personal jurisdiction based on participation in a civil conspiracy and the applicable Florida law.  *Id.* at 19–29.  While Judge Rodgers ultimately rejected the plaintiffs' theory, the analysis shows that the plaintiffs made a good faith mistake regarding jurisdiction and did not intentionally disregard proper jurisdiction.  *See id.*  Therefore, the court concludes that section 16.064(a) applies, and the relevant statutes of limitations were tolled when the Florida Lawsuit was filed on July 10, 2019.

### 3.  Applying the Statutes of Limitations

Two years, ten months, and seven days passed between when the plaintiffs' claims accrued and when the statutes of limitations were tolled.  *See supra*, III(B)(1)–(2) (the claims accrued on September 3, 2016, and the statutes of limitations were tolled on July 10, 2019).  The plaintiffs' claims for unjust enrichment are subject to a two-year statute of limitations.  *See Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 871 (Tex. 2007) (per curiam).  Similarly, the plaintiffs' claims for negligent misrepresentations and omissions are subject to a two-year statute of limitations.  *See HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 885 (Tex. 1998).  Therefore, the plaintiffs' claims for unjust enrichment and negligent misrepresentations and omissions are barred, and the defendants' motion for summary judgment on these claims is GRANTED.

The statute of limitations for fraud is four years.  Tex. Civ. Prac. & Rem. Code § 16.004(a)(4); *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 216 (Tex. 2011); *see also Williams v. Khalaf*, 802 S.W.2d 651, 658 (Tex. 1990) ("The 1979 amendment now makes

all fraud actions consistent, in that they have a four-year limitation period, regardless of the remedy sought."). Civil conspiracy is "a theory of derivative liability that shares a limitations period with that of its underlying tort." *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 142 (Tex. 2019). The underlying tort for the plaintiffs' civil conspiracy claim is fraud. Dkt. 21 ¶ 61. Thus, the civil conspiracy claim is also subject to a four-year statute of limitations. Therefore, the plaintiffs' fraud, fraudulent misrepresentations and omissions, fraudulent inducement, and civil conspiracy claims are not barred.

## C. Fraud Based on Agency

The plaintiffs' claims for fraud, fraudulent misrepresentations and omissions, and fraudulent inducement are based on an agency theory where the defendants are liable for the actions of Glass and Krispin. *See* Dkts. 21, 26, 34. The defendants' motion for summary judgment argues that there is no genuine dispute of material fact that Glass and Krispin were not agents of the defendants. Dkt. 23 ¶¶ 10–11.

"An agent's authority to act on behalf of a principal depends on some communication by the principal either to the agent (actual or express authority) or to the third party (apparent or implied authority)." *Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007). "[O]ne seeking to charge the principal through apparent authority of an agent must establish conduct by the principal that would lead a reasonably prudent person to believe that the agent has the authority that he purports to exercise." *Biggs v. U. S. Fire Ins. Co.*, 611 S.W.2d 624, 629 (Tex. 1981).

As the party moving for summary judgment, the defendants bear the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. McCrary's declaration states that he never authorized Glass or Krispin "to act or speak on behalf

15

of myself or Santa Fe." Dkt. 23, Ex. A at 2.  Prior to December of 2017, McCrary declares that he had one phone call with the plaintiffs and only exchange pleasantries.  *Id.*  Further, McCrary states that he engaged in no email correspondence with the plaintiffs, although they may have been copied on various emails sent by others to him.  *Id.*  Thus, the defendants have provided evidence that neither Glass nor Krispin had actual or apparent authority, and the court finds that the defendants have satisfied their initial burden.

The burden now shifts to the plaintiffs to set forth specific facts showing a genuine issue for trial.  *See* Fed. R. Civ. P. 56(e).  In his deposition, McCrary testified that he relied on Glass and Krispin to keep the plaintiffs informed on the status of the Hunters Chase and Hammerly Oaks transactions.  Dkt. 26, Ex. 2 at 106.  Further, he testified that he authorized Glass to inform the plaintiffs regarding the nonrefundable nature of their investment and relied on him to do so.  *Id.* at 110.  Finally, Glass forwarded the plaintiffs an email dated July 27, 2016, where McCrary had instructed Glass to obtain Lee Anne Savoia-McHugh's signature and identification as required by a title company.  Dkt. 26, Ex. 1-E.

For summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505 (1986).  The court concludes that McCrary's testimony is evidence that Glass and Krispin had actual authority to act as the defendants' agents.  Additionally, the July 27, 2016, email is evidence that Glass had either actual or apparent authority to act as the defendants' agent because drafting such an email is conduct by McCrary that could lead a reasonably prudent person in the plaintiffs' position to believe Glass was acting on behalf of the defendants.  Thus, the plaintiffs have met their burden to show that

16

there is a genuine dispute of material fact on whether Glass or Krispin were the defendants' agents. *See* Fed. R. Civ. P. 56(e).  Therefore, the defendant's motion for summary judgment on the fraud claims based on an agency theory is DENIED.

## D. Civil Conspiracy to Commit Fraud

The Texas Supreme Court has established "the elements of civil conspiracy as: '(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result.'"  *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 141 (Tex. 2019) (quoting *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983)).  After examining the parties' briefing on the defendants' motion for summary judgment and finding no evidence to support the third element concerning a meeting of the minds, the court *sua sponte* ordered supplemental briefing from both parties to provide them notice that they must come forward with all their evidence.  Dkt. 32; *see also Celotex*, 477 U.S. at 326.  The parties timely filed supplemental briefing as ordered, and the court concludes that there is no evidence of a meeting of the minds.  *See* Dkts. 33, 34.

### 1.  Objection to Defendants' Supplemental Briefing

The defendants styled its supplemental briefing as a motion to supplement its prior motion for summary judgment.  Dkt. 33.  The plaintiffs objected to allowing a motion as an inappropriate filing beyond the court's order.  Dkt. 34 at 3.  To be clear, the court raised the issue of summary judgment on the civil conspiracy claim *sua sponte*.  *See* Dkt. 32.  The purpose of the court's order was to ensure the parties had notice that they must "come forward with all of [their] evidence." *See Celotex*, 477 U.S. at 326.  Except for being styled as a motion, the defendants' filing is in line with the court's order for supplemental briefing.  *See* Dkts. 32, 33.  Thus, the court will consider

17

the briefing in its analysis of whether the defendants are entitled to summary judgment on the civil conspiracy claim.  However, to the extent that the defendants' filing can be construed as a separate motion, that motion is DENIED.

### 2. Meeting of the Minds

In their supplemental briefing, the plaintiffs provided no additional evidence and argued that the existence of the conspiracy to defraud can be inferred from McCrary's deposition testimony.  Dkt. 34 at 2–3.  "[P]roof of a conspiracy may be, and usually must be made by circumstantial evidence, but vital facts may not be proved by unreasonable inferences from other facts and circumstances . . . [or] established by piling inference upon inference." *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 858 (Tex. 1968) (internal citation omitted).  "Circumstantial evidence may be used to establish any material fact, but it must constitute more than mere suspicion." *Transp. Ins. Co. v. Faircloth*, 898 S.W.2d 269, 278 (Tex. 1995) (citing *Browning–Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 927–28 (Tex. 1993)).  "[S]ome suspicion linked to other suspicion produces only more suspicion, which is not the same as some evidence." *Browning–Ferris*, 865 S.W.2d at 927.

Whether there is a meeting of the minds is a vital fact for a civil conspiracy claim. *Schlumberger*, 435 S.W.2d at 857; s*ee also Shunta v. Westergren*, No. 01-08-00715-CV, 2010 WL 2307083, at *8 (Tex. App.—Houston [1st Dist.] June 10, 2010, no pet.) (mem. op.) (affirming summary judgment on a civil conspiracy claim because though there was evidence of communication and coordinated action, there was no evidence for a meeting of the minds to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means).  A civil conspiracy "is sufficiently established by proof showing concert of action or other facts and

18

circumstances from which the natural inference arises that the unlawful, overt acts were committed in furtherance of common design, intention, or purpose of the alleged conspirators." *Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 581 (Tex. 1963). "When viewing meager circumstantial evidence, if 'circumstances are consistent with either of two facts and nothing shows that one is more probable than the other, neither fact can be inferred.'" *Transp. Ins.*, 898 S.W.2d at 278 (quoting *$56,700 in U.S. Currency v. State*, 730 S.W.2d 659, 662 (Tex. 1987)).

The plaintiffs argue that McCrary's deposition testimony provides circumstantial evidence that there was a meeting of the minds to defraud the plaintiffs. *See* Dkt. 34 at 2–3. McCrary testified that he knew the plaintiffs' role was to provide funding for earnest money and the required third-party costs. Dkt. 26, Ex. 2 at 42. McCrary also admitted he did not disclose the need for a sponsor with significant net worth and experience—as well as many other details about the real estate deals—to the plaintiffs because he only spoke with Glass and Krispin. *Id.* at 44, 144–73. Instead, he relied on Glass and Krispin to communicate with the plaintiffs. *Id.* at 103–06. McCrary and Krispin worked together to secure funding from Nexus. *Id.* at 144–46. Moreover, McCrary knew the plaintiffs' investment for Hunters Chase would be used to repay Nexus and satisfy his guaranty for that loan. *Id.* at 153. Finally, McCrary conceded that an email from Krispin to the plaintiffs assuring that a $100,000 deposit was not at risk was, on its face, a misrepresentation because that money was not refundable. [2] *Id.* at 157. McCrary admits he did not inform the plaintiffs how their investments would be used. *Id.* at 159. However, he believed someone had told the plaintiffs but did not know who. *Id.*

---

[2]   Neither McCrary nor Santa Fe are listed as recipients on the email in question, nor are their names mentioned. Dkt. 26, Ex. 2-26.

The court agrees that McCrary's deposition testimony raises suspicion about whether a conspiracy existed, but that suspicion is not evidence. *See Transp. Ins.*, 898 S.W.2d at 278. The concert of action between McCrary, Glass, and Krispin described in the testimony is meager circumstantial evidence for the inference that there was a meeting of the minds to defraud the plaintiffs. Further, the court concludes that the same testimony permits the equally probable inference that McCrary did not intend to defraud the plaintiffs but made a mistake in trusting Glass and Krispin to make the necessary disclosures to the plaintiffs. Thus, neither conclusion can be reasonably inferred to establish a vital fact, and the plaintiffs have only presented the court with a suspicion that there was a meeting of the minds, not evidence. *See id.*

Critically, the plaintiffs present no evidence that the defendants intended the plaintiffs to suffer injury or knew of a scheme by Glass or Krispin to injure them. *See* Dkts. 26, 34; *see also Schlumberger*, 435 S.W.2d at 857 ("One without knowledge of the object and purpose of a conspiracy cannot be a co-conspirator; he cannot agree, either expressly or tacitly, to the commission of a wrong which he knows not of."). At best, the plaintiffs' evidence shows that McCrary worked with Glass and Krispin for his own economic benefit. *See* Dkt. 26, Ex. 2 at 103–06, 144–46, 153. The court rejects the plaintiffs' attempt to pile inference upon inference to turn testimony of a joint pursuit of economic benefit into evidence of a meeting of the minds for an unlawful purpose. *See Schlumberger*, 435 S.W.2d at 858.

The court concludes that the plaintiffs have not come forth with any evidence to show there was a meeting of the minds. Thus, there is no genuine dispute of material fact on this element and the defendants are entitled to summary judgment as a matter of law for the civil conspiracy claim. *See* Fed. R. Civ. P. 56(e).

## IV. CONCLUSION

For the reasons given above, the defendants' motion for summary judgment (Dkt. 21) is GRANTED IN PART AND DENIED IN PART.  The court GRANTS summary judgment on the unjust enrichment, negligent misrepresentations and omissions, and civil conspiracy claims which are DISMISSED WITH PREJUDICE.  The court DENIES summary judgment on the fraud, fraudulent misrepresentations and omissions, and fraudulent inducement claims.  To the extent that the defendants' supplemental briefing (Dkt. 33) may be construed as a separate motion, that motion is DENIED.

Signed at Houston, Texas on June 6, 2022.

Gray H. Miller
Senior United States District Judge